UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
:
BRUCE BAUMGARTEN, Ph.D.,            :
:
Plaintiff,           :
:
:   Civil Action No. 16-CV-7059
:
-against-                           :
:
GARY GERMAN and                     :   COMPLAINT
NONNATECH INC.,                     :
:
:
Defendants.          :
-----------------------------------------------------------x

Bruce Baumgarten, Ph.D. ("Plaintiff" or "Dr. Baumgarten"), by and through his attorneys, Feldman Law Group, P.C, files this Complaint for correction of inventorship of a Patent and related declaratory relief with respect to the inventorship and ownership of U.S. Patent No. 9,361,778 against Defendants Gary German ("German") and Nonnatech Inc. ("Nonnatech") (collectively, "Defendants").

## NATURE OF THE ACTION

1. On June 7, 2016 the U.S. Patent and Trademark Office duly issued U.S. Patent No. 9,361,778, entitled "Hands Free Assistive and Preventive Remote Monitoring System," ("the '788 Patent"). (A copy of the '788 Patent is attached hereto as Exhibit "A".)  Over several years, Dr. Baumgarten and Defendant German collaborated on the inventions that are the subject of the '788 Patent, and their intention during that process was always to jointly exploit the '788 Patent for their mutual benefit. Notwithstanding those joint efforts and intentions, German has now made

1

clear his new-found intention to exploit the '788 Patent for his benefit alone. Moreover, Dr. Baumgarten has learned that German is listed as the sole inventor on the '788 Patent issued on June 7, 2016, and further, that by purported assignment dated July 22, 2016 German attempted to assign a 100% interest in the '788 Patent to a company under his control, Defendant Nonnatech. Accordingly, Dr. Baumgarten has commenced this action in order to vindicate and protect his co-inventorship and co-ownership rights in the '788 Patent.

## THE PARTIES

2. Dr. Baumgarten is an individual who resides in Syosset, New York.

3. Upon information and belief, Defendant German is an individual who resides in Mount Vernon, New York.

4. Upon information and belief, Defendant Nonnatech is a New York corporation with offices for the conduct of its business located in Mount Vernon, New York and within the City, County and State of New York at 244 5th Avenue, Suite G264, New York, New York 10001.

5. Upon information and belief, Defendant German is the principal officer and majority shareholder of Defendant Nonnatech.

## JURISDICTION AND VENUE

6. Dr. Baumgarten seeks a correction of inventorship of a Patent pursuant to 35 U.S.C. § 256, and related declaratory relief pursuant to 28 U.S.C. §§ 2201 & 2202.

7. This Court has original and supplemental jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1338 and 1367.

8. Upon information and belief, Defendants are subject to the personal jurisdiction of this Court, consistent with the principles of due process, because Defendants maintain offices for

2

the conduct of their business within this State, regularly conduct business within this State, and reside within this State.

9. Venue is proper in this District pursuant to 28 U.S.C. §1391(b) in that a substantial part of the events or omissions giving rise to the claims occurred within this Judicial District.

## BACKGROUND

### Development of the '788 Patent

10. Sometime during 2012, Dr. Baumgarten and German jointly began to conceive of and develop a hands-free preventive remote monitoring process for the aged and the infirm, with the understanding that they would jointly own and exploit the invention.

11. At that time, there already existed monitoring systems for the aged and the infirm based upon a device worn or held by the subject, such as the pendant system of "Life Alert" and other similar products.

12. Recognizing the inherent flaws in such a system that requires volitional acts on the part of the subject, Dr. Baumgarten and German set out to conceive and develop a hands-free, remote system of monitoring that could not only detect events, but also prevent clinically serious events from happening in the first place by detecting and analyzing trends in the data collected that could reveal underlying concerns in the subject person's daily routines.

13. A substantial part of the collaborative process between Dr. Baumgarten and German occurred at Dr. Baumgarten's offices in Babylon and Syosset, New York, as well as at various locations in the vicinity of Syosset, New York.

14. From late 2012 through 2015, Dr. Baumgarten and German met numerous times at these locations to work together on the conception and development of the inventions contained

in the '788 Patent.

15.  Dr. Baumgarten and German also met with various telecom providers such as Verizon and Sprint, in Woodbury, New York as part of their joint efforts to develop and exploit their invention.

16.  The culmination of their joint efforts is found in the '788 Patent.

17.  While German possessed technical knowledge concerning the hardware and software utilized in the '788 Patent, Dr. Baumgarten, a New York State licensed psychologist and clinical/behavioral specialist, conceived of and developed the numerous medical and clinical aspects of the inventions that are the subject of the '788 Patent, and without which the '788 Patent could not have been realized.

18.  During the development process, Dr. Baumgarten conceived of and contributed numerous ideas and concepts that would become part of the '788 Patent, and contemporaneous documents and witnesses corroborate Dr. Baumgarten's contributions.

19.  For example, in Claims 1, 4, 5, 6, 7, 8, 10, 11, 13, 14 and 17 of the '788 Patent, Dr. Baumgarten conceived of and developed the concept of monitoring concerning trends in the data, rather than just sudden events, in order to prevent, rather than just react to, a negative event, and developed the rules and trigger points to enable such trends to be detected by identifying linked sensor events to help identify underlying problems, including the concept of monitoring "no activity" such as a subject's lack of frequency in going to the bathroom, or opening a medicine cabinet, or getting out of bed, and the rules and trigger points to apply to such detected trends.

20.  Each of these contributions were significant elements of the patent claims.

21.  In or about early 2013, as the development of the invention was progressing, Dr.

Baumgarten and German jointly engaged, and paid, a patent attorney to assist in the process of applying for and obtaining a patent on their invention.

22. Throughout the Patent application process, both Dr. Baumgarten and German jointly paid the invoices submitted by their Patent Attorney.

23. A provisional Patent Application for their invention was first filed in March 2013 by their jointly engaged attorney.

24. Their attorney then filed the formal Patent application for their invention on March 14, 2014.

25. The Patent Application lists Dr. Baumgarten as a co-applicant on the basis of his "sufficient proprietary interest" in the patent.

26. The application, however, omitted Dr. Baumgarten from the list of inventors of the patent. Notwithstanding such omission, Dr. Baumgarten did in fact conceive of and develop the claims set forth in the '788 Patent.

27. In furtherance of the patent application process, in December 2015, Dr. Baumgarten participated in the Examiner Interview conducted by the Examiner in the Patent and Trademark Office.

28. Certain amendments to the Patent claims were made following the Examiner Interview in December 2015.

29. Those amendments included ideas and concepts conceived by Dr. Baumgarten.

30. On June 7, 2016 the '788 Patent was issued.

**The Parties' Joint Efforts to Exploit the Patent and German's Recent Repudiation**

31. Commencing in early 2014, Dr. Baumgarten and German also engaged, and jointly paid, several corporate attorneys in order to put in writing their agreement to exploit their invention.

32. Several attorneys thereafter counseled Dr. Baumgarten and German, and prepared drafts of documents for them in furtherance of their intention to jointly exploit their invention.

33. For example, on or about January 15, 2015 counsel for Dr. Baumgarten and German, at the law firm Lowenstein Sandler, LLP., transmitted the following draft documents to both Dr. Baumgarten and German:

- By-Laws of Nonnatech;
- Founder Non-Disclosure and Invention Assignment Agreements;
- Written Consent of the Board of Directors of Nonnatech in Lieu of an Organizational Meeting (electing Dr. Baumgarten and German officers of Nonnatech, and acknowledging their respective assignments of the Invention to Nonnatech, among other things);
- Subscription Agreements for both Dr. Baumgarten and German (acknowledging their assignments of their Inventions to Nonnatech and issuing them each significant shares of stock in Nonnatech).

34. While none of these documents were ever executed by German or Dr. Baumgarten, they evidence Dr. Baumgarten's co-inventorship of the inventions that are the subject of the '788 Patent.

35. Similarly, Dr. Baumgarten and German jointly contributed to the preparation of a detailed Power Point "Investor Presentation."

36. The Investor Presentation, which identifies Dr. Baumgarten as the Vice-President and Chief Clinical Officer of the "Management Team," was in fact used by Dr. Baumgarten and German in meeting with potential investors seeking to exploit their invention.

37. Portions of the Investor Presentation were also submitted to the Patent Examiner during the patent application process.

38. In addition to filing fees and attorney fees, Dr. Baumgarten also paid a portion of numerous additional expenses incurred in the development and efforts to exploit the invention that is the subject of the '788 Patent.

39. Notwithstanding the foregoing, by mid-2016, German began distancing himself from Dr. Baumgarten and appeared to be repudiating Dr. Baumgarten's co-inventorship and co-ownership of the '788 Patent.

40. In furtherance of such repudiation, upon information and belief and unbeknownst to Dr. Baumgarten, on or about July 22, 2016, German purported to assign all interests in the '788 patent to Nonnatech (the "Assignment").

41. Upon information and belief, the Assignment purported to assign a 100% ownership interest in the '788 Patent to Nonnatech.

42. By letters dated July 29, 2016 and October 7, 2016, Dr. Baumgarten reminded German of their co-inventorship and co-ownership of the '788 Patent and demanded that German abide by their agreement to jointly exploit the invention.

43. By letters dated August 18, 2016, and December 16, 2016, German rejected Dr. Baumgarten's claims and disputed Dr. Baumgarten's co-inventorship claim.

44. Accordingly, a justiciable controversy exists between the parties that is now ripe for adjudication.

## FIRST CLAIM FOR RELIEF
(Correction of Inventorship, 15 U.S.C. § 256)

45. Dr. Baumgarten repeats and realleges each of the allegations contained in Paragraph 1 through 44 above as if fully set forth herein.

46. The '788 Patent lists Dr. Baumgarten as a co-applicant, based upon his "sufficient proprietary interest" in the patent.

47. However, the issued '788 Patent only lists German as the inventor.

48. Notwithstanding the failure of the patent to list Dr. Baumgarten as a co-inventor, he did in fact contribute to the conception and development of the claims set forth in the '788 Patent.

49. By reason of the foregoing, Dr. Baumgarten is rightfully a co-inventor of the '788 Patent, and is entitled to an Order from this Court, pursuant to 35 U.S.C. § 256, directing the Commissioner of Patents to correct the '788 Patent to list Dr. Baumgarten as a co-inventor.

## SECOND CLAIM FOR RELIEF
(Declaratory Relief – Declaration of Co-Ownership of the '788 Patent)

50. Dr. Baumgarten repeats and realleges each of the allegations contained in Paragraph 1 through 49 above as if fully set forth herein.

51. By reason of Dr. Baumgarten's co-inventorship of the '788 Patent with German he is a co-owner of the '788 Patent.

52. Dr. Baumgarten has never assigned his ownership interests in the '788 Patent to Nonnatech or any other person or entity.

53. Through the Assignment, German purported to assign and convey to Nonnatech a 100% ownership interest in the '788 Patent.

54. German and Nonnatech have disputed Dr. Baumgarten's co-ownership claim and instead maintain that Nonnatech is the owner of a 100% interest in all right, title and interest to the '788 Patent.

55. By reason of the forgoing, an actual controversy exists between the parties that is ripe for a judicial determination by this Court.

56. By reason of the foregoing, Dr. Baumgarten has been damaged in an amount to be proved at trial.

57. By reason of the foregoing, Dr. Baumgarten is entitled to an Order of this Court declaring that he is a co-owner of the '788 Patent and that the purported Assignment to Nonnatech is invalid.

58. Dr. Baumgarten has no adequate remedy at law.

## **PRAYER OF RELIEF**

WHEREFORE, Plaintiff prays for judgment against the Defendants as follows:

(A) That the Court enter an Order Directing the Commissioner of Patents to correct the '788 Patent to list Plaintiff as a co-inventor of the '788 Patent;

(B) That the Court Declare that Plaintiff is a co-owner of the '788 Patent, and that the purported Assignment to Nonnatech is invalid and of no force or effect;

(C) That Defendants, and their directors and officers, agents, servants, employees, and all other persons in active concert or privity or in participation with it, be preliminarily enjoined during the pendency of this action, and permanently enjoined thereafter, from directly or indirectly, entering into any exclusive licenses for the '788 Patent;

(D) That Defendants, jointly and severally, be ordered to pay Plaintiff the costs of this action, including Plaintiff's reasonable attorneys' fees; and,

(E) That the Court grant to Plaintiff such other and further relief as is necessary, just and proper.

## JURY DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff respectfully requests a trial by jury of all issues properly triable by jury.

Dated: December 22, 2016
New York, NY

FELDMAN LAW GROUP, P.C.

By: _____
Stephen E. Feldman (SF-5630)
Jonathan J. Ross (JR-0581)
James Markey (JM-0811)

120 Main Street (Route 25A)
Huntington, New York 11743
Tel: (631) 549-3770
Fax: (631) 549-8962
-and-
220 East 42nd Street, Suite 3304
New York NY 10017
Tel: 212-532-8585
Fax: 212-532-8598
*sfeldman@feldman-law.com*
*jross@feldman-law.com*
*jmarkey@feldman-law.com*

*Attorneys for Plaintiff*